[No. 17708.    Department One.    March 8, 1923.]

WESTERN ELECTRIC COMPANY, INCORPORATED, *Plaintiff*, v. NORWAY PACIFIC CONSTRUCTION & DRYDOCK COMPANY, *Defendant*.

SOUTHWARK FOUNDRY & MACHINE COMPANY, *Respondent*, v. M. E. BARHAM, *as Receiver etc.*, .et al., *Appellants*.[1]

SALES (179-1)—CONDITIONAL SALES—ASSIGNMENT OF CONTRACT— EFFECT.  Under the laws of Pennsylvania, the seller's reserved title, under conditional sales contracts, passes to the assignee of the notes given for the price, where the notes were given as evidence of and not in payment of the indebtedness, and were discounted to a bank under an oral understanding and intent that the negotiation should not affect the seller's reserved title.

CONTRACTS (56)—SALES (179-1)—WHAT LAW GOVERNS—CONDITIONAL SALES—ASSIGNMENT.  An assignment of a conditional sales contract for the purposes of security, not being required by our laws to be in writing, or recorded, or with notice to the creditor, is controlled by the laws of the state where made, and not by the situs of the property in this state.

RECEIVERS (32)—PROPERTY VESTING IN RECEIVER.  A receiver, except as to fraudulent sales and transactions, is not vested with any better title than the insolvent, as to property conditionally sold to the insolvent, seller's retained title to which had legally vested in another, upon the seller's assignment for the purposes of collateral security.

Appeal from a judgment of the superior court for King county, Ronald, J., entered July 12, 1922, upon findings in favor of the plaintiff, in an action to determine the title to property held by a receiver, tried to the court.  Affirmed.

[1] Reported in 213 Pac. 686.

*Battle, Hulbert, Gates & Helsell,* for appellants.
*S. H. Kelleran,* for respondent.

Holcomb, J.—In an action brought by the Western Electric Company, as plaintiff, and the Norway Pacific Construction & Drydock Company, a corporation, as defendant, appellant Barham was, on June 7, 1920, appointed receiver of the defendant, hereinafter· called the "Norway Company." The receiver took possession of all of the assets of the Norway Company, consisting of a shipbuilding yard with buildings and machinery at Everett, Washington. Among the assets of the Norway Company were certain items of shipbuilding machinery which had been· manufactured by the Southwark Foundry & Machine Company, hereinafter called the ·"Southwark Company," respondent herein, and shipped by it to the Norway Company in the spring of 1919. This proceeding arises out of a petition of the Southwark Company filed in the cause, requesting that the receiver be ordered to surrender to the Southwark Company all of the shipbuilding machinery which was originally manufactured by the Southwark Company and delivered to the Norway Company. The Norway Company originally ordered the shipbuilding machinery involved in this action from the Perine Machinery Company, of Seattle. The Perine Machinery Company in turn ordered from the Southwark Company, in Philadelphia. Bills of lading, with sight drafts attached, came to the Perine Machinery Company, and payment was refused, largely because of the financial embarrassment of the Norway Company. Being unable to obtain the money on its sight drafts, the Southwark Company sent one Brownback to Seattle for the purpose of adjusting the difficulties and making settlement. A conference was held

between Brownback of the Southwark Company, Buchner of the Perine Company, and Barham, the secretary of the Norway Company. Resulting therefrom, six conditional sale contracts between the Norway Company and the Southwark Company were executed, and eighteen promissory notes were signed by the Norway Company as evidence of the purchase price. There were three notes with each conditional sale contract. Thereupon the machinery was delivered to the Norway Company and the notes were sent to the Southwark Company in Philadelphia. Later an additional contract of conditional sale was entered into between the same parties covering one plate planer, and three additional promissory notes were signed by the Norway Company as evidence of the purchase price. Under all of the conditional sale contracts the Southwark Company reserved the absolute ownership and title of all the machinery delivered, which had not been paid for. There was also a paragraph in each conditional sale contract reading:

"That the balance of the purchase price (naming it) is evidenced by the following described promissory notes, which are accepted as additional evidence of indebtedness and not as payment." (Then follows specific descriptions of the notes given thereunder.)

The notes, as soon as executed, were discounted by the Southwark Company with the Fourth Street National Bank of Philadelphia. No written assignment of the conditional sale contracts or bills of sale of the property to the bank were executed by the Southwark Company. When the original notes given under the contracts matured, they were renewed by the execution of new notes in substantially the same amounts. These renewal notes were sent to the Southwark Company and were discounted by it with the Southwark National

Bank of Philadelphia. The original notes were then taken up and returned to the Norway Company.

On July 1, 1919, the Norway Company executed a trust deed to the Scandinavian-American Bank of Seattle to secure the issue of gold notes. This trust deed covered all of the property and assets of the company located at its plant in Everett. Of the $980,000 of gold notes issued, the Scandinavian-American Bank owned an interest in the principal sum of $135,000, and these notes are now assets in the hands of the state supervisor of banking, as liquidator of the assets of the Scandinavian-American Bank.

In answer to the petition of the Southwark Company for the return of the machinery, the receiver alleged that the Southwark Company had negotiated in the ordinary course of business the notes executed by the Norway Company, and that thereby it had waived any and all claims in the conditional sale contracts in and to the property. The state supervisor of banking intervened in the proceeding and alleged the execution of the trust deed, the delivery of the gold notes in the sum of $135,000 to the Scandinavian-American Bank, and also set up the same allegations as were made by the receiver in reference to the negotiation of the notes.

The Southwark Company, in its reply, alleged several defenses: first, it alleged that it negotiated the notes to a bank in Philadelphia, and it was agreed with the bank that the latter should have the benefits of the Southwark Company under the conditional bills of sale; second, that the negotiation of the notes occurred in Pennsylvania, and that the Southwark Company was in ignorance of the laws of the state of Washington with reference to notes given under conditional sale contracts; third, that the receiver is estopped to assert any loss of title in the petitioner

by reason of certain facts set forth; fourth, that the laws of Pennsylvania control, and under those laws the negotiation of the promissory notes carried therewith the rights under the contracts of conditional sale.

The court made findings of fact and conclusions of law in favor of the Southwark Company, adopting the contentions of the Southwark Company in a general way as set forth in its reply. Among other things, it found that the notes and each contract of conditional sale constituted but one contract in each instance, and as such they were negotiated and assigned. The decree entered directed the receiver to surrender to the Southwark Company all the personal property described in all the conditional sale contracts. The receiver and state supervisor of banking have appealed from the decree of the court below.

The first and principal contention of appellant is that, since this court, in the case of *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71, so held, it has been the well-recognized doctrine that a conditional vendor who takes promissory notes under a conditional sale contract as evidence of the purchase price may not discount and transfer those notes as evidence of the absolute promise of the vendee to pay; may not separate the notes from the property itself without electing to waive his interest in the conditional sale contract.

In that case the Winton Company sold an automobile to one Burch under a conditional sale contract, reserving absolute title to the automobile in the Winton Company. The note was taken for the unpaid purchase price, which was an entirely separate instrument from the contract of sale. The Winton Company indorsed the note to the First National Bank of Seattle as col-

lateral security for a loan. When the original note matured a new note was given by Burch, the purchaser and vendee. The question then arose whether the act of indorsing the note to the bank constituted in law an election by the Winton Company to make the sale absolute. The court noticed the general rule that the seller has a choice of two remedies. He may recover the property, or he may, by some act, elect to treat and rely upon the unpaid purchase price as an absolute debt due from the purchaser. We said in that case the seller cannot have both remedies. We there said:

"Whatever exceptions there be to this rule, a reference to the authorities will show that such exceptions occur for the most part in jurisdictions where the law regards such contracts of sale only as security for the payment of the debt, in the nature of a lien, or where the contract by its terms evidences an intention to create a lien upon the property as security for the debt. The title, which is by this contract reserved in the seller, is the absolute title, under which he may retake the property, if at all, and retain it without any obligation whatever to account therefor, or for any surplus of the value thereof above the unpaid purchase price, to the purchaser. The thing which our law recognizes as being retained by the seller under this contract is not a mere lien or equity securing the balance of the purchase price, but the absolute title, which remains in him or passes from him to the purchaser absolutely, accordingly as the conditions of the sale are broken, or as they are fulfilled, or as may result from some act of election on the part of the seller."

The court held that, by the transfer of the note by the vendor, the property was released and the title became absolute in the vendee, and that the bank acquired no right in the lien upon the property, the title of which passed to the conditional vendee. That case has been followed in the following subsequent cases: *Rose v. Rundall*, 86 Wash. 422, 150 Pac. 614; *Eilers*

*Music House v. Douglas,* 90 Wash. 683, 156 Pac. 937, L. R. A. 1916E 613; *Stewart & Holmes Drug Co. v. Reed,* 74 Wash. 401, 133 Pac. 577.

The respondent asserts, first that there was an oral agreement of the parties under which the negotiations could be had without affecting the reserved title under the conditional sale contracts, and that agreement should be given effect, either upon the theory that it may be independently established and enforced as an oral agreement, or, if necessary, that the written instrument be reformed so as to effectuate the intention of the parties, and as reformed be enforced.

Second, that this understanding that the notes should be discounted without affecting the reserved title, and the continued acting thereon by the Southwark Company, acquiesced in by the Norway Company, and the continued extensions and forbearances, operate as an estoppel to assert an election.

Third, that the law of the State of Pennsylvania controls, and that under that law the assignment of a claim for purchase money and the negotiation of the notes given therefor passes to the assignee all of the rights and remedies of the property.

Fourth, that the Southwark Company transferred to the Bank of Philadelphia all of its rights under both the notes and the contracts of conditional sale.

The trial court found, and it was all but incontrovertibly established, that,

"It was clearly and definitely understood by and between the parties that this negotiation could, and should be made without affecting the reserved title under said contract of conditional sale; that petitioner wanted immediate cash; that the notes for the purchase price would be given and accepted not as payment, but as additional evidence of the obligation; that the notes should be discounted, and that upon no other

terms could possession of the machinery be delivered to the defendant.''

In pursuance of this understanding between the parties, the Southwark Company discounted the notes at its bank in Philadelphia, and at that time it was the agreement between the company and the bank that the contracts of conditional sale and the rights thereunder should pass with the notes, and that the bank should have the benefits of all the rights of the Southwark Company under the contract of conditional sale, and that copies of the contracts then in the possession of the treasurer of the Southwark Company should be held by him for the bank. As the negotiated notes matured, at the solicitation of the Norway Company, renewals were given. As shown by the correspondence in the record, these renewals were given to take the place exactly of the original notes and were to be covered by the conditional bills of sale.

Certain attorneys of the state of Pennsylvania testified by deposition to the effect that the law of Pennsylvania is that the assignor's rights are transferred or assigned by the assignment of the purchase money notes; that title retained in a bailment lease or conditional sale contract is regarded as a security for the unpaid purchase money; that an agreement at the time of the negotiation of purchase money notes by a transferer at the request of the transferee, who held conditional sale contracts for the account of the transferee, constitute an equitable assignment of the conditional sale contracts; that, under the law of Pennsylvania, an equitable pledge of personal property, or an equitable assignment of a chose in action, is valid without delivery. Their testimony was supported by citations from the decisions of the courts of Pennsylvania, which, being examined, corroborate their testimony.

The trial court accordingly found that the law of Pennsylvania controlled the assignment made in Pennsylvania of the purchase money notes, at the time of the negotiation thereof in Pennsylvania, and passed to the assignee all of the rights and remedies in the property.

Appellant insists that the law of the situs of the personal property (in this case Washington) must control to transfer the title to personal property, and that in determining the legal effect of a contract of conditional sale it must be remembered, first, that the contracts and notes were executed in Washington, and that the laws of Washington are the *lex loci contractus*, and under the general rule such laws govern. *LaSelle v. Woolery,* 14 Wash. 70, 44 Pac. 115, 53 Am. St. 855, 32 L. R. A. 75; *Hunter v. Wenatchee Land Co.,* 36 Wash. 541, 79 Pac. 40. Second, since the property covered by the conditional sale contracts was located in Washington, all questions affecting the ownership of that property and transfer of title thereof must be determined by our laws, for the reason that the situs of the property is here. Many cases are cited to the effect that the title of tangible personal property is ordinarily governed by the laws of its situs, and that these decisions rest upon the ground that every state has the right to regulate the transfer of property within its limits, and whoever sends property to it immediately submits to the regulations of that state concerning its transfer.

It is not necessary to lengthen this decision by citing the cases cited by appellant to the above effect. The cases cited relate generally to statutes requiring the execution or recording of instruments, or transactions governed by the statutes of frauds, and the like.

As to this case, the contracts were in writing, so

as to comply with the statutes of frauds; they were conceded to have been filed for record. We have held that no written assignment is necessary *(Seattle National Bank v. Emmons,* 16 Wash. 585, 48 Pac. 262); that notice to the debtor is not necessary *(Bellingham Bay Boom Co. v. Brisbois,* 14 Wash. 173, 44 Pac. 153, 46 Pac. 238); and that recording of the assignment is not required *(General Motors Acceptance Corporation v. Arthaud Land Co.,* 118 Wash. 593, 204 Pac. 194); and that the assignment of a conditional sale contract may be made as security *(Western Lumber Exchange v. Johnson,* 110 Wash. 200, 188 Pac. 390).

In *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 L. R. A. 235, where the note and conditional sale contract were all in one paper, and where the rights under the same were transferred by a writing on the back of the instrument, we held that the principle of the *Winton* case, *supra,* did not apply. It was there held that, since the vendor retained the legal title, there was no legal impediment to the transfer of such title to the bank, subject, of course, to the vendee's rights; that it therefore became a question of the intention of the vendor to be gathered from the terms of the assignment, and that the transfer of the "right, title and interest" of the vendor "in and to the within note and memorandum conditional sale" evidenced an intent upon the part of the vendor and the bank to transfer to the bank both of the rights that the vendor possessed, and either of which the bank could elect to claim, as the vendor could have done had no assignment been made. In this case it was established beyond peradventure that it was the intent of the Norway Company to permit the Southwark Company to hold the conditional sale contracts as additional security for its notes, and the notes were secured

by the contracts. It was known that it was the intent of the Southwark Company to transfer to the Philadelphia bank all of its rights under the notes and under the contract, just as it was the intent of the vendor in the *Black Diamond* case, *supra.* The only difference between the two cases as to the evidence of this intent was that in the *Black Diamond* case the evidence was all in one instrument and was in writing, while in this case it rests in parol and in the acts and conduct of the parties. But there is nothing, as stated above, which requires this evidence to be in writing, or the assignment to be in writing. In Pennsylvania the law is that an equitable assignment of a pledge or security such as this is valid without delivery. *Davis v. Billings,* 254 Pa. St. 574, 99 Atl. 163. The *Black Diamond* case holds that, if all the rights, both under the contract and under the note, are transferred there is no election. In that case, the *Winton* case, *supra,* was distinguished. Referring to the *Winton* case, the court said:

"There was involved an assignment by endorsement, of a simple promissory note given by the vendee to the vendor to evidence the purchase price of the conditional sale contract. The note was an entirely separate instrument from the contract of sale. It did not upon its face make any reference to the contract, nor did the contract make any reference to the note. The transfer of the note was only a transfer of the right to look to the vendee as a debtor. This, we held, constituted an election to vest title to the property in the vendee and thereafter look to him only as a debtor."

In this case quite the contrary is the situation.

All of the acts of the parties show that the conditional sale contracts were to be given as additional security, and, as the court found, notes and contract, one contract in each instance, and the vendor in Pennsylvania transferring these notes intended to, and did, transfer

its conditional sale contracts, and both transferer and transferee considered the conditional sale contracts as security for the notes.

The receiver, except as to fraudulent sales and transfers, is not vested with any higher or better right or title to the property than the insolvent had when the receiver's title accrued, and neither has the supervisor of banking any superior rights. The bank, to which the supervisor succeeded, had actual notice of all the facts regarding the matter.

We agree with the amply supported finding of the trial court that the Southwark Company transferred to the bank in Philadelphia, as collateral security for its debt, all its rights in both the notes and conditional contracts of sale, and with the conclusion of the trial court that the law of Pennsylvania controls, and that, under that law, an assignment of a claim for purchase money, and negotiation of the notes given therefor, passes to the assignee all the rights and remedies in the property.

The decree is right and is affirmed.

MAIN, C. J., MACKINTOSH, BRIDGES, and MITCHELL, JJ., concur.