[No. 45046. En Banc. June 15, 1978.]

MORSE ELECTRO PRODUCTS CORPORATION, *Appellant,* v. BENEFICIAL INDUSTRIAL LOAN COMPANY, *Respondent.*

*Breskin, Rosenblume & Robbins,* by *Arnold B. Robbins* and *Stephen A. Cohen,* for appellant.

*Johnson, George, Hull & Porter, P.S.,* by *T. Dennis George,* for respondent.

HICKS, J.—This case, certified here from the Court of Appeals, concerns the claims of the parties to a reserve fund created by an agreement for the sale of chattel paper. The trial court granted summary judgment in favor of defendant, Beneficial Industrial Loan Company. We affirm.

Morse Electro Products Corporation sold a line of electrical merchandise to National Vacuum and Sewing Machines Stores, Inc., against a line of credit extended pursuant to a security agreement between them. The agreement, which was filed with the Washington Secretary

of State as a financing statement on September 27, 1967, gave Morse a security interest in all of National's inventory and the proceeds from the sale of that inventory. National defaulted on debts arising under the agreement, and currently owes Morse in excess of $5,430.61.

In 1970, National entered into a master dealer agreement with Beneficial.[1] That master agreement provided for Beneficial to purchase consumer installment contracts arising from retail sales by National. The contracts are chattel paper under RCW 62A.9–105(1)(b).

Under the master agreement, Beneficial retained a reserve fund equal to 10 percent of the unpaid balance of the consumer contracts. The reserve fund, agreed to be $5,430.61, was to be used: (1) "to pay any defaults and losses which may occur upon any and all notes purchased . . ."; and (2) "to pay or satisfy any loss, cost, damage or expenses which you may suffer or incur by reason of any breach by us [National] of any provision of this agreement . . .". In another provision of the master agreement, National warranted that the contracts would be valid, enforceable and "not subject to any disputes, set–offs or counter–claims."

In April 1971, National was declared insolvent and a receiver was appointed in King County Superior Court cause No. 736008.

In March 1972, a class action was commenced against Beneficial and others by persons who had purchased appliances from National. That action claims (1) that a usurious rate of interest was charged; (2) that the appliances were unconscionably overpriced; and (3) that food buying plans promised by National to consumers were never made available. Some of the allegations as to Beneficial's liability rest on its actual or constructive knowledge of National's illegal practices; other claims are based on the mere fact that it

---

[1]National and Beneficial actually entered into two agreements. Since both agreements are identical insofar as is relevant here, they will be treated as a single agreement.

purchased defective contracts without any allegation as to its knowledge. Beneficial has expended more than $5,430.61 in defending against the class action claims, and the action is still pending.

In May 1974, the receiver's claim against Beneficial for the reserve fund was assigned to Morse. Morse brought this action for recovery of the fund in July 1974. Beneficial and Morse stipulated to most of the facts and agreed that the matter was ripe for summary judgment.

In June 1975, Beneficial filed a financing statement with the Secretary of State covering all of the collateral described in the master agreement and specifically including the reserve fund.

On July 16, 1976, the trial court entered summary judgment declaring that Beneficial was entitled to the fund and awarding it costs.

Morse argues that it is entitled to the fund under either of two theories. The first is that, as assignee of National's receiver, Morse is entitled to assert National's claim to the fund. Since all outstanding contracts have been liquidated, Beneficial no longer has any interest in the fund and it must be paid over to Morse. The second theory is that, as a secured creditor of National, Morse has a secured interest in the fund which takes priority over any interest Beneficial may have subsequently acquired.

As to the first of these contentions, it is clear that as assignee of the receiver's claims, Morse stands in his shoes, but acquires no right in excess of what the receiver had to transfer. *Paullus v. Fowler*, 59 Wn.2d 204, 367 P.2d 130 (1961); *Young v. American Can Co.*, 131 Wash. 374, 230 P. 147 (1924). Similarly, the receiver stands in the shoes of the insolvent. *Western Elec. Co. v. Norway Pac. Constr. & Drydock Co.*, 124 Wash. 49, 213 P. 686 (1923). Therefore, on this claim Morse may recover only if National would have had a right to the reserve fund under the terms of the master agreement.

As indicated above, National warranted in the master agreement that the contracts would not be subject to "any

disputes". The agreement also provided that the reserve fund could be used to pay any cost or expense incurred because of a breach by National of any of the agreement's provisions.

National breached the warranty provision when a "dispute" arose as to the validity of the contracts—*i.e.*, when the class action was filed. Under the broad language of the warranty, it is of no concern whether National caused the dispute. The provision is not limited to disputes caused by National, but warrants simply that no dispute will arise. The fact that suit was filed against Beneficial constitutes a breach by National of the agreement.

Since Beneficial has expended more than $5,430.61 in defending the class action, the reserve fund is exhausted and there is no longer any amount in which National would have had an interest. Since Morse, as assignee of National's receiver, has no greater interest than National would have had, its claim under the first theory must fail.

Under its second theory, Morse claims that it has a security interest in the fund which is prior to any interest Beneficial may have acquired. Beneficial contends that Morse had no interest in the fund because it is not "proceeds" under the 1967 security agreement. Beneficial also argues that, even if the fund is "proceeds", (1) Morse's interest lapsed under RCW 62A.9–403(2) and is now junior to Beneficial's secured interest in the fund; or (2) Morse's security interest was terminated by the filing of a termination statement in 1973.

We agree with Beneficial that any interest Morse may have had, lapsed and is now junior to Beneficial's interest. Since that determination is dispositive of this case, we do not discuss Beneficial's other contentions.

RCW 62A.9–403(2) provides that the effectiveness of a financing statement lapses 5 years after the date of filing unless a continuation statement is filed. The effect of such a lapse is that the security interest becomes unperfected. RCW 62A.9–403(2). Morse concedes that its statement lapsed, but argues that the lapse should not allow

Beneficial's conflicting interest, which was subordinate during the period of perfection, to take priority.[2] It contends that where there is a lapse, the lapsing interest becomes unperfected only as against those interests which subsequently attach; interests which were previously subordinate remain subordinate. *See* Shattuck, *Secured Transactions (Other Than Real Estate Mortgages)—A Comparison Of Article 9 Of The Uniform Commercial Code And The Pre-Code Washington Law,* in Collected Essays on the Uniform Commercial Code in Washington 753 (1967).

We are convinced that an interest which lapses under RCW 62A.9–403(2) becomes unperfected as against all other interests, including those which were previously junior. RCW 62A.9–403(2) provides only that the lapsing interest "becomes unperfected." Nothing in the statute suggests that it might be unperfected as to some interests and perfected as to others. Such a result would introduce an unnecessary element of uncertainty and confusion into the operation of the code. *See* Official Comment 3, RCWA 62A.9–403.

Both the Washington and official comments to RCWA 62A.9–403 indicate that an interest which becomes unperfected because of a lapse, is subject to defeat by all persons who take priority over an unperfected interest. Official comment 3 states that the holder of any perfected interest has priority over a lapsed interest, even where that perfected interest was junior before the lapse. Washington comment 2 expresses agreement with the official comment and suggests that this rule conforms with prior Washington authority. *See Best v. Felger,* 77 Wash. 115, 137 P. 334 (1913). In view of the plain meaning of RCW 62A.9–403(2), as verified by these comments, we hold that Morse's interest lapsed in 1972, 5 years after it was filed, and is junior to any perfected interest.

---

[2] Under RCW 62A.9–301(1)(a) and RCW 62A.9–312(5), an unperfected security interest is subordinate to the perfected security interest of another person. Thus, if the lapse rendered Morse's interest unperfected as against all other interests, Beneficial's interest, perfected by the 1975 filing, would have priority.

Morse argues that in any event, Beneficial's interest was never perfected. It contends that Beneficial's 1975 filing did not perfect its interest because such perfection cannot take place after a receiver is appointed. The receiver takes property as he finds it and holds it *in custodia legis* for the benefit of whomever may finally establish a right to it. *Gloyd v. Rutherford,* 62 Wn.2d 59, 380 P.2d 867 (1963). In this case, the receiver took National's interest in the fund, subject to those rights of Beneficial which had attached prior to receivership. As between Beneficial and National (now the receiver), the obligation was fixed by the master agreement. The matter of perfection did not alter that obligation. It only affected the priority of rights to the fund as between Beneficial and other creditors. Since the 1975 filing merely established the priority of a previously attached interest, it was not inconsistent with the receiver's custodial role and was sufficient to perfect Beneficial's interest. Since that perfected interest has priority over Morse's unperfected interest under RCW 62A.9–312(5)(b), Morse's claim as a secured creditor must also fail.

Affirmed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.